NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: April 18, 2023

S23Y0037. IN THE MATTER OF NATALIE SPIRES PAINE.

PER CURIAM.

This disciplinary matter relates to allegations made against Natalie Spires Paine (State Bar No. 312524) related to her involvement in a double-murder case in 2018 as the District Attorney of the Augusta Judicial Circuit and as the lead prosecutor in that case. The State Disciplinary Board filed a grievance on its own motion, see Rule 4-203 (2), alleging that Paine violated Rules 3.4 (g) (using methods of obtaining evidence that violate legal rights of opposing party or counsel); 4.2 (knowingly communicating with a person represented by counsel); 8.1 (a) (knowingly making false statements of material facts in connection with a disciplinary matter); and 8.4 (a) (1) (violating or knowingly attempting to violate rules, knowingly assisting or inducing another to do so, or doing so

through acts of another) of the Georgia Rules of Professional Conduct found in Bar Rule 4-102 (d).[1]

Special Master Patrick H. Head held an evidentiary hearing on the matter and found that the State failed to prove that Paine violated any rules and recommended that no discipline be imposed. The Bar filed exceptions to, and requested review of, the Special Master's report and recommendation. On review, the State Disciplinary Review Board concluded that some of the Special Master's findings were clearly erroneous and that Paine violated Rules 3.4 (g) and 8.1 (a). The Review Board recommended that a

---

[1] Rule 3.4 says: A lawyer shall not . . . (g) use methods of obtaining evidence that violate the legal rights of the opposing party or counsel." Rule 4.2 (a) says: "A lawyer who is representing a client in a matter shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or court order." Rule 8.1 says: "An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact." And Rule 8.4 (a) says: "It shall be a violation of the Georgia Rules of Professional Conduct for a lawyer to: (1) violate or knowingly attempt to violate the Georgia Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

The maximum penalty for a violation of Rules 3.4 (g), 4.2, and 8.1 is disbarment. Rule 8.4 provides that "[t]he maximum penalty for a violation of Rule 8.4 (a) (1) is the maximum penalty for the specific Rule violated."

six-month suspension be imposed.

As explained below, we reject the Review Board's conclusions, which failed to give appropriate deference to the Special Master's findings. Applying the appropriate standard of review ourselves, we defer to the Special Master's fact-findings—which are not clearly erroneous—and we agree with the Special Master that no discipline is warranted.

1. *Evidence Presented at the Hearing Before the Special Master*

The Bar has the burden of proving each element of alleged rule violations by clear and convincing evidence. See Bar Rule 4-221.2. At the hearing before the Special Master, the following evidence was presented.

Paine testified as follows. She was the lead prosecutor in a case against William Krepps, Vaughn Verdi, and another defendant for the murder of two men. Lieutenant Lucas Grant from the Richmond County Sheriff's Office was the lead investigator. On February 27, 2018, Krepps and Verdi were transported from the jail to the Richmond County Sheriff Office's Criminal Investigation Division

("CID"). Lt. Grant told Paine that morning that the men were going to be transported. He asked Paine to tell the defendants' lawyers about their transportation to the CID and to go to the CID herself, both of which she did.[2]

While at the CID, both defendants met with their attorneys privately in a CID interview room. Paine knew about Krepps's meeting with his attorney because at some point during the meeting, she knocked on the door and "stuck [her] head in the interview room" to speak to the attorney. Both attorney-client meetings were recorded "by audio and visual means," and the recordings were included within the evidence provided to the DA's office by the Sheriff's Office, which Paine burned onto 107 compact discs (CDs). She then distributed copies of the CDs to the parties. She did not,

---

[2] In her answer to the formal complaint, Paine admitted that Krepps's attorney told her that there was no need to move Krepps to the CID because he did not want to talk with law enforcement. Before the special master, Paine testified that she did not remember this conversation. However, after she was shown her answer to the formal complaint, she acknowledged the admission. As we explain in footnote 5 below, the Review Board pointed to this inconsistency in concluding that Paine had made a false statement of material fact, even though this statement was not the basis for the violation of Rule 8.1 alleged in the formal complaint (Count III), and the Special Master expressly found that this inconsistency had "little evidentiary value."

however, watch the CDs before distributing them. To the contrary, she did not know that recordings of the attorney-client meetings were on the CDs until Verdi filed on September 21 a motion to, among other things, dismiss the indictment based on the recording of his private attorney-client conversation, at which point members of the media began calling Paine.[3]

As to whether she knew that interviews that were held in the CID were being recorded, Paine testified as follows. It was her understanding that it was the "common procedure" to record "all the conversations in the CID rooms." She had viewed "thousands of interviews" recorded in the CID interview rooms, and each of those recordings "starts before the person walks into the room, and it doesn't end until after the person has been led out of the room." She had also previously watched interrogations conducted in the CID interview rooms on a live monitor at the CID. She assumed everyone knew the CID interview rooms were recorded and that if

---

[3] The trial court denied the motion to dismiss, but suppressed the attorney-client recordings, which Paine agreed was appropriate.

attorneys wanted to have a private conversation with their clients, "they would indicate that or that the Sheriff's Office would tell them, you know, we're recording." At the time Krepps and Verdi met with their attorneys in the interview rooms, Paine did not know that the software used to make the recordings did not have the ability to mute the recording. After Paine discovered that privileged attorney-client conversations had been recorded, she demanded that a new recording system be installed to prevent that from happening again, and she spent $40,000 of the DA's budget for the new system.

Lt. Grant testified as follows. He instructed that Krepps and Verdi be brought to the CID on February 27, and Paine did not direct or influence that decision. In fact, if Paine had told him not to transport Krepps, he "still would've transported [the defendant]" because Paine was "not [his] boss." When attorneys met with clients in the CID rooms, the rooms were "visually monitor[ed], only visually, [to ensure that] no contraband is being passed by the attorney or the defendant is not trying to harm the attorney or vice versa." There was not a way to stop the audio recording of the CID

interview rooms while still visually recording the room, but Lt. Grant believed that the Sheriff's Office had a protocol in place to ensure that any privileged communications that were recorded were deleted—but they obviously "dropped the ball" as to Krepps's and Verdi's recordings.

Finally, Krepps's attorney testified that before she met with Krepps in the CID interview room, she asked Lt. Grant if the meeting was being recorded, "and he motioned to somebody . . . to cut the audio," so the attorney "made the assumption that we were being visually watched, but not listened to."

The Bar's complaint alleged four counts of rule violations based on the conduct described above. We address each count below, explaining the allegation, as well as the relevant findings and conclusions of the Special Master and of the Review Board.

2. *Count I*

Count I of the complaint alleged that Paine violated Rule 3.4 (g), which prohibits a lawyer from "us[ing] methods of obtaining evidence that violate the legal rights of the opposing party or

7

counsel," when she "1) participated in the recording of the . . . meeting[s]; 2) obtained evidence in violation of the law and the United States and Georgia Constitutions; 3) obtained the recordings of the . . . meeting[s]; 4) distributed the recordings of the . . . meeting[s] . . . to all counsel in the Case; and 5) prosecuted [the co-defendants] using evidence that [she] knew or should have known had been obtained in violation of the law and the United States and Georgia Constitutions."

As to Count 1, the Special Master found that although Paine and defense counsel "were aware that the interview rooms at CID were recorded, both audio and video," they were "also under the mistaken belief that the audio could be stopped." The Special Master also found that "[t]here was no evidence presented that [Paine] 'invited criminal defense counsel to meet with their clients in a CID interview room'" and "nothing in the evidence to suggest that [Paine] knew attorney-client conversations were being recorded." As to the CDs containing the meeting recordings, the Special Master found that Paine "did not look at any of the CDs to

review the content, and was not aware that any of the CDs contained the audio recordings of the attorney-client conversations." The Special Master further explained that although Paine copied and distributed the recordings, "there is nothing in the rule that prohibits the distribution of illegally obtained evidence," and "[e]ven if there were, the special master finds from the evidence that [Paine] did not knowingly do so" since she was "not aware that she was distributing the conversations of the attorneys with their clients." The Special Master also found that "[t]here was no evidence presented that [Paine] ever **_used_** any unlawfully or illegally obtained evidence." (Emphasis in original.) Finally, the Special Master found that Paine, "though under no obligation to do so under Rule 3.4 (g), immediately took steps to ensure no future attorney-client conversations would be recorded" once she learned of the recordings. Based on these findings, the Special Master concluded that the Bar failed to prove that Paine violated Rule 3.4.

The Review Board concluded that the Special Master's finding that "[t]here is nothing in the evidence to suggest that [Paine] knew

9

attorney-client conversations were being recorded" was "clearly erroneous as there was evidence upon which findings of fact could have been drawn to support a violation." The Review Board concluded that Paine "knew all conversations in the CID interview room were uniformly and consistently recorded" and she knew that Krepps met with his attorney in a CID interview room. Thus, the Review Board concluded that Paine "had a duty to assure that the [attorney-client meetings] were not part of any CDs delivered to the parties," but failed to do so.

3. *Count II*

Count II alleged that Paine violated Rule 4.2, which forbids a lawyer from "communicat[ing] about the subject matter of [a] representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or court order," when she "continued interrogations of [the co-defendants] after knowing that each was represented by counsel and when she continued prosecuting [the co-defendants] using testimony obtained

10

in the interrogations."

The Special Master concluded that "[n]o evidence; none; zero; not even one scintilla of evidence was presented to support the allegation" of Count II that Paine violated Rule 4.2. The Review Board agreed with the Special Master that the Bar did not submit any evidence in support of this claim.

4. *Count III*

Count III alleged that Paine violated Rule 8.1 (a), which prohibits a lawyer from "knowingly mak[ing] a false statement of material fact" "in connection with a disciplinary matter," when she "stated in a grievance response dated May 20, 2019, that she had no knowledge of the recordings of privileged conversations until the media started calling on September 28, 2018, when in fact [she] was aware of the recordings prior to [that date]," and when she "stated, through counsel, in a letter to . . . the State Disciplinary Board, dated November 4, 2019, that [she] was not involved in any manner with the transport of [the defendants] to [the sheriff's office], when in fact,

11

[she] had prior knowledge of the transport and its purpose."[4]

The Special Master found that although Paine testified that she had "reviewed 'thousands of hours of interviews' at CID, there was no evidence presented by the State Bar that <u>any</u> of those

---

[4] The Bar's formal complaint does not quote either of the allegedly false statements, but Paine's May 20 grievance response and November 4 letter to the State Disciplinary Board were introduced at the hearing before the Special Master. In the May 20 response, Paine stated that she was surprised when she arrived at a superior court hearing about these recordings in the criminal case and was:

> interrogated as if I had engaged in some sort of conspiracy to trick the defendants into talking to their lawyers on camera so that I could surreptitiously record them talking. What they thought I possibly had to gain from this is still a mystery. I had no knowledge about the existence of the recordings or the camera system's operation when the interviews [were conducted] in February 2018. . . . I didn't know the recording(s) existed until the media started calling on September 28, 2018.

At the hearing before the Special Master, Paine was questioned about her statement, "I had no knowledge about the existence of the recordings or the camera system's operation when the interviews [were conducted] in February." In the November 4 response, Paine stated through counsel:

> District Attorney Paine was not a driving force, or any force in the law enforcement officer's decision to transport/speak with any of these represented individuals. District Attorney Paine was not involved, in any manner, with this unilateral law enforcement officer's conduct.

And later in the response, she stated:

> As explained above, District Attorney Paine had absolutely nothing to do with the transport or planned interrogation of these represented parties as same was facilitated, orchestrated, initiated and executed by law enforcement before District Attorney Paine became aware of the issue.

Paine was not questioned about any statements from the November 4 letter response at the hearing before the Special Master.

interviews were between an attorney and a client" and that "[t]he State Bar has presented no evidence to refute [Paine's] claim regarding her lack of knowledge of the attorney-client conversations being recorded." (Emphasis in original.) The Special Master further found that "the evidence of [Paine's] conduct after learning that the attorney-client conversations had been recorded[] is consistent with and supportive of her testimony; she did not previously know attorney-client conversations were being recorded."

As to the second allegedly false statement, the Special Master found that despite Paine's "mere knowledge of the transport . . . the evidence presented through the testimony of [Paine] and Lt. Grant is clear and convincing that [Paine] had no involvement in the transportation of the defendants from the jail to the CID." The Special Master also credited Lt. Grant's testimony that he would have transported the defendants even if Paine told him not to. Therefore, the Special Master found that Paine's "statements in these two instances were in fact true, based upon the evidence

13

presented."[5]

The Review Board concluded that "there are facts in the record that support a finding of a violation of 8.1 (a) and therefore finds the determination by the Special Master that there were no such facts is clearly erroneous." Specifically, the Review Board found that because Paine reviewed "thousands of hours" of recorded CID interviews and knew that Krepps was taken to CID and met with Krepps's attorney in the interview room, Paine's statement that she was unaware attorney-client conversations were recorded was false. The Review Board did not appear to address the second allegedly false statement.[6]

---

[5] The Special Master also noted the discrepancy between Paine's testimony that she did not remember Krepps's attorney telling her that Krepps did not want to make a statement and her admission that Krepps's attorney did tell her this. The Special Master, however, found "little evidentiary value as to whether the conversation took place or not," based on Lt. Grant's testimony that he would have transported Krepps regardless of what Paine told him. The Review Board similarly noted this discrepancy and—with no analysis—apparently found that the discrepancy supported a Rule 8.1 (a) violation.

[6] The Review Board also noted that during the hearing, Paine testified that finding the body of one of the murder victims was not important to the prosecution, and that this testimony contradicted her acknowledgement before

14

5. *Count IV*

Count IV alleged that Paine violated Rule 8.4 (a) (1), which says that an attorney may not "violate or knowingly attempt to violate the Georgia Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another." The Bar alleged that Paine "attempted to violate" Rules 3.4 (g) and 4.2, violated those rules through the acts of Lt. Grant, and "knowingly assisted" or "induce[d]" Lt. Grant to violate those rules.

The Special Master found that Paine did not violate Rule 3.4 (g) or Rule 4.2; that she did not attempt to violate those rules; and that she did not assist Lt. Grant in recording attorney-client conversations. The Special Master also stated that he "found no evidence that Lt. Grant, or anyone else at the Richmond County Sheriff's Office was directed, encouraged, induced or asked by [Paine] to perform any task on her behalf, including, but not limited to the recording of any attorney conversation with their client." The

the criminal trial court that finding the body was important. However, neither of the statements alleged by the Bar to be violations of Rule 8.1 (a) related to the importance of finding the victim's body.

Special Master further stated that "[t]here was no evidence that [Paine] gave any direction to anyone at the Sheriff's Office, including Lt. Grant, to transport defendants to CID or to interview or attempt to interview any of the defendants."

The Review Board agreed with the Special Master that the Bar did not prove this count.[7]

6. *Paine's Exceptions to Counts I and III*

Paine contends that the Review Board erred in rejecting as clearly erroneous the Special Master's findings that the Bar did not meet its burden to prove that Paine violated Rules 3.4 (g) and 8.1 as alleged in Counts I and III. Paine argues that the Review Board "misquotes and contorts the credibility findings made by the Special Master by truncating the complete finding."

7. *The Bar's Response to Paine's Exceptions*

The Bar maintains that Paine violated Rules 3.4 (g) and 8.1 as

---

[7] Because the Special Master concluded there was no evidence to support the alleged violations set forth in Counts II and IV, the Review Board agreed with the Special Master's conclusions, and the Bar took no exception to the Review Board's conclusions, we do not address these counts further.

alleged in Counts I and III, and recommends that Paine receive a minimum sanction of a public reprimand.

As to Count I, the Bar argues that because Paine knew that conversations in the CID rooms were recorded in their entirety and that she knew that the defendants in this case were transported to the CID to give statements, she must have known that the attorney-client meetings at issue in this particular case were recorded. The Bar further argues that Paine "caused" the attorneys to meet with the defendants in the CID rooms because she told the attorneys about the transportation of the defendants to the CID. It further contends that she obtained the CDs with the meeting recordings and made copies of them.

As to Count III, the Bar argues that although Paine stated in her grievance response that she had no knowledge of the recordings of the privileged conversations in this case, Paine admitted that she knew that all conversations in CID interrogation rooms were recorded in their entirety. And although Paine stated, through counsel, that she was not involved in the transport of the defendants

17

from the jail to the sheriff's office in any manner, she admitted that she told the attorneys that the defendants were being transported to the CID.

8. *Analysis and Conclusion*

As an initial matter, we set out the proper standard of review for our review of a Special Master's fact-findings and credibility determinations. "[B]ecause this Court recognizes that the special master is in the best position to determine the witnesses' credibility, it generally defers to the factual findings and credibility determinations made by the special master unless those findings or determinations are clearly erroneous." *In the Matter of Eddings*, 314 Ga. 409, 416 (877 SE2d 248) (2022). See also *In the Matter of Braziel*, 306 Ga. 385, 387 (830 SE2d 730) (2019) (deferring to the Special Master's factual findings because they were "supported by the record, and we are not in a position to second-guess his credibility determinations").

Bar Rule 4-216 (a)—which applies to cases that, like this one, are initiated after July 1, 2018—provides, in relevant part, that

"[t]he findings of fact made by a Special Master may be reversed if the State Disciplinary Review Board finds them to be clearly erroneous or manifestly in error. Conclusions of law and determinations of appropriate sanctions shall be reviewed de novo." We have recently explained and emphasized that the Review Board must apply this standard to its review of a Special Master's fact-findings and credibility determinations. See *In the Matter of Cook*, 311 Ga. 206, 215 n.3 (857 SE2d 212) (2021) (explaining that current Bar Rule 4-216 (a) "specifically limit[s] the Review Board's ability to set aside a special master's factual findings to cases in which the Review Board finds them to be clearly erroneous or manifestly in error").

The application of the clearly erroneous standard is where the Review Board started making missteps. The Review Board recited this standard, but then misapplied it by ignoring findings from the Special Master and by making its own findings inconsistent with the Special Master's findings, without explaining *why* the Special Master's findings were clearly erroneous. For example, the Review

19

Board appropriately deferred to the Special Master's finding that Paine and Krepps's attorney "were aware that the CID interview rooms 'were recorded, both audio and video,'" but then ignored the very next finding made in the Special Master's report: that Paine and the attorney "were also under the mistaken belief that the audio could be stopped." Side-stepping this key finding, the Review Board concluded that Paine had a duty to ensure "that the audio recording was actually not running at the time the attorney-client conversation took place."

Instead of engaging with the relevant factual and credibility findings the Special Master made after personally hearing and evaluating the testimony of Paine, Lt. Grant, and Krepps's attorney, the Review Board focused on the Special Master's broad statements that there "were no facts presented that [Paine] violated Count I" and that there were "no facts to support" the allegation in Count III. The Review Board then concluded that these findings were "clearly erroneous" because "there was evidence upon which findings of fact could have been drawn to support a violation" in Count I and "there

are facts contained in the record that support a finding of a violation" in Count III. In other words, because there was at least some evidence from which an inference could be drawn that would support the allegations in Counts I and III that Paine violated Rules 3.4 (g) and 8.1 (a), the Special Master's statements that there were "no facts" to support the violations set forth in Counts I and III were clearly erroneous and the Special Master's conclusions must therefore be discarded.[8]

We acknowledge that the Special Master may have been overly broad in stating that there was *no* evidence to support Counts I and III, because there was *some* evidence that could support them, depending on the inferences and credibility determinations drawn

---

[8] Of course, "some evidence" is not the proper legal standard the Review Board should have applied. The following point illustrates why the proper standard matters: even though there was some evidence that could have supported an inference that Paine knew about the attorney-client recordings made in this case, the key is that the Special Master did *not* draw that inference based on the evidence presented, and instead credited Paine's testimony that she did not know that the privileged conversations were recorded here. To satisfy the proper standard, the Review Board would have had to explain why the permissible inferences the Special Master drew, and the credibility determinations the Special Master was authorized to make, were clearly erroneous. The Review Board did not do so here.

from that evidence. But the Special Master made the relevant credibility determinations and rejected the very inferences the Review Board seems to rely on to make its case, and the Review Board's rejection of the Special Master's overly broad statements in this regard did not give it license to then ignore the inferences the Special Master drew and the specific factual findings the Special Master made.

As relevant to Counts I and III, the Special Master's specific findings—which the Review Board did not acknowledge—include that Paine did not cause the defendants to be transported to CID and did not invite their attorneys to meet them there; that she did not participate in any recording of the attorney-client meetings; that she was under the mistaken belief that the audio recording of the CID interview rooms could be stopped; and that she was not aware that any of the CDs contained audio recordings of the attorney-client conversations when she burned and then distributed them. Given the testimony and other evidence presented at the hearing, we cannot say that those findings were clearly erroneous—and the

22

Review Board has offered no basis for concluding that they were. As such, the Review Board erred by not deferring to them. See Bar Rule 4-216 (a).

Like the Review Board, the Bar appears to ignore some of the Special Master's findings in its briefing before this Court. Specifically, the Bar fails to acknowledge that although the Special Master found that Paine was "aware that the interview rooms at CID were recorded, both audio and video," the Special Master also found that Paine was "under the mistaken belief that the audio could be stopped" and credited Paine's testimony that she did not know that conversations between attorneys and clients were being recorded. These findings demonstrate how Paine could know that the rooms were generally recorded but not know that the privileged conversations at issue in this case actually were recorded and were thus copied onto the CDs. And in arguing that Paine *caused* the defendants to meet with their attorneys in the CID rooms, the Bar ignores the Special Master's finding that Paine had no involvement in—or influence over—the decision to transport the defendants from

23

the jail to the CID and did not invite defense counsel to meet with their clients in a CID interview room.

Viewed properly, these findings made by the Special Master are consistent and support his conclusions that Paine did not "use methods of obtaining evidence that violate the legal rights of the opposing party or counsel" in violation of Rule 3.4 (g) and that she did not violate Rule 8.1 by stating that "she had no knowledge of the recordings of privileged conversations until the media started calling" and by stating that she was not involved in transporting the defendants to the CID. The Bar's decision to ignore such findings is as inexplicable as the Review Board's decision to replace the Special Master's factually supported findings with its own findings.

Affording the proper level of deference to the Special Master's factual findings and credibility determinations, see *In the Matter of Eddings*, 314 Ga. at 416, we agree with the Special Master that the Bar did not prove by clear and convincing evidence that Paine violated Rules 3.4 (g) (Count I) and 8.1 (a) (Count III). We therefore reject the recommendation of the Review Board that a six-month

24

suspension be imposed and the recommendation of the Bar that a public reprimand be issued. See *In the Matter of Lee*, 301 Ga. 74, 78-79 (799 SE2d 766) (2017); *In the Matter of Cleveland*, 285 Ga. 527, 528 (678 SE2d 91) (2009). No discipline is imposed, and this matter is dismissed.

*No discipline imposed and case dismissed. All the Justices concur.*