318 Ga. 375
FINAL COPY

S24Y0049, S24Y0050. IN THE MATTER OF DEIRDRE MARIA
STEPHENS (two cases).

PER CURIAM.

These disciplinary matters are before the Court on the report

and recommendation of the State Disciplinary Review Board, which

reviewed the report and recommendation of Special Master Patrick

Longan at the request of Deirdre Maria Stephens (State Bar No.

678789), pursuant to Bar Rules 4-214, 4-215, and 4-216. The Special

Master concluded that Stephens, who has been a member of the

State Bar of Georgia since 1997, violated Rules 1.15 (I) (a),[1] 1.15 (II)

(a),[2] 3.3 (a) (1),[3] and 8.4 (a) (4)[4] of the Georgia Rules of Professional

---

[1] Rule 1.15 (I) (a) provides, in relevant part: "A lawyer shall hold funds or other property of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own funds or other property."

[2] Rule 1.15 (II) (a) provides, in relevant part: "All funds held by a lawyer for a client and all funds held by a lawyer in any other fiduciary capacity shall be deposited in and administered from a trust account."

[3] Rule 3.3 (a) (1) provides: "A lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal[.]"

[4] Rule 8.4 (a) (4) provides: "It shall be a violation of the Georgia Rules of

Conduct ("GRPC" or the "Rules"), found in Bar Rule 4-102 (d), and recommended disbarment, the maximum penalty for a violation of any of these Rules. The Review Board adopted the Special Master's findings of fact and conclusions of law but recommends that Stephens receive a six-month suspension and public reprimand, with conditions for reinstatement. Having reviewed the record, and for the reasons discussed below, we reject the recommendation of the Review Board and, instead, agree with the Special Master that disbarment is warranted.

1. *Special Master's Report*

(a) *Findings of Fact*

Regarding State Disciplinary Board Docket ("SDBD") No. 7488, the Special Master made the following findings of fact. On May 2, 2018, a $700 check was presented on Stephens's trust account, but there were insufficient funds available to cover the check. The reason for the overdraft was that Stephens did not realize that a

---

Professional Conduct for a lawyer to . . . engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

client, who had been making regular monthly payments into her trust account, had not made an expected payment. The payment Stephens expected that would have prevented the overdraft was for fees that Stephens had already earned. When Stephens learned of the overdraft, she contacted the client, who paid her the fees owed, and she then deposited personal funds into her trust account to cover the overdraft. The Special Master determined that no client was harmed by the overdraft or the deposit of earned fees into the trust account, although there was potential injury to clients from allowing the trust account to go below the minimum required balance.

Next, regarding SDBD No. 7489, the Special Master recounted the following. In 2015, Stephens represented a client and his company in connection with the sale of the company's assets to a limited liability company (the "LLC"). The parties executed an Asset Purchase Agreement and a Bill of Sale, with the terms of the Agreement providing that the LLC was to pay $80,000 upon request "as a deposit" while the remainder of the $180,000 purchase price was to be paid no later than December 1, 2015. The LLC owner was

not able to pay the $80,000 before he had to leave the United States on other business, although he did give the client a post-dated check for $80,000. Nevertheless, the client pressured the LLC owner to pay him while he was away, and in response, the LLC owner wired $75,000 into Stephens's trust account and delivered the remaining $5,000 to the client in cash after he returned to the United States. No provision in the parties' Agreement required the initial $80,000 to be held in escrow or to be paid into, or maintained in, Stephens's trust account; rather, it was done as a matter of expediency and convenience.

Stephens testified that she disbursed the $75,000 to the client almost immediately after she received the funds into her bank account and when she paid him there was no indication of any claim by the LLC owner to the money or the possibility of any return of funds. The State Bar offered no evidence to the contrary, and the record did not pinpoint the exact date of the disbursement to the client. On June 17, 2015, Stephens sent a letter to the LLC owner on behalf of her client's company alleging that the LLC had breached

4

the Agreement; the letter purported to terminate the deal and asserted that the client would be keeping the $80,000 as liquidated damages. One month later, the LLC owner and the LLC (collectively, the "plaintiffs") sued the client and his company for breach of the Agreement and sought an injunction to enforce the transaction; the case also included a claim for unjust enrichment and alleged that the plaintiffs were entitled to recover $80,000 for fraud. The plaintiffs then filed an emergency motion for interlocutory injunction, and in August 2015, the trial court held a hearing on that motion. During the hearing, counsel for the plaintiffs stated, "we just found out today that the $80,000 is still in a trust account," and they confirmed with the court that they wanted the court to consider ordering as an additional remedy that Stephens not dispose of the $80,000. The court then asked Stephens, "I don't mean to be presumptuous — is it in your trust account," and she responded, "Yes, Your Honor." When Stephens told the court this, she knew the information was false; in fact, only $75,000 of the $80,000 had ever been in her trust account, and all of those funds

5

had been disbursed to the client at some point before the hearing. The trial court entered an injunction that relied upon Stephens's false statement, with the August 28, 2015 order stating, "The $80,000 shall be maintained in defense counsel's escrow account until further order of this court or the conclusion of the litigation, whichever comes first."

In April 2016, the plaintiffs filed a motion to require the defendants to deposit funds into the registry of the court, because in deposition testimony "none of the Defendants were able to confirm that the $80,000 was still in their attorney's trust account," and after the trial court ordered a response in June 2016, Stephens filed a response stating, "There has been no change in the money that is being held in trust." In context, the Special Master determined that this statement was intentionally false and meant to deceive the court, which Stephens succeeded in doing, as the court denied the plaintiffs' motion.

Trial was then held in 2017, and the jury found in favor of the plaintiffs with the judgment providing that the plaintiffs recover the

principal sum of $80,000 with interest plus attorney fees. The client filed a notice of appeal in October 2017, and a trial judge granted the plaintiffs' motion for supersedeas bond pending appeal from the judgment; however, neither Stephens nor her client ever filed a supersedeas bond. In April 2018, the judge ordered Stephens to "release the $80,000 held in her trust account for Defendant . . . and pay them to Plaintiffs in partial satisfaction of this Court's judgment[,]" but Stephens did not comply with this order. In July 2018, the trial judge dismissed the client's notice of appeal in the case for not filing the trial transcript; Stephens had taken no steps to rebut the presumption that the eight-month delay in filing transcripts was unreasonable, as no one had appeared on behalf of the client at the hearing on the motion to dismiss the appeal.

In April 2019, the trial court entered an order on contempt and to show cause; the court found Stephens in contempt for failing to comply with the court's order to pay $80,000 to the plaintiffs; and the court noted that Stephens failed to respond to the motion for contempt and did not appear at the hearing on that motion. The trial

7

court also ordered Stephens to give an accounting to the court within ten days of the status of the $80,000 and to show cause why she should not be sanctioned, but she did not comply with this order. Instead, Stephens filed a notice of appeal of the contempt order, which was based on an erroneous legal theory that the contempt motion had to be personally served on her. The clerk of the trial court sent notice to Stephens that she needed to submit an amended notice of appeal before the appeal could be accepted, but she never did so. Then, in June 2019, the trial court entered an order reciting the foregoing procedural history and found that Stephens "has willfully refused to comply with this Court's orders regarding the $80,000, even after being given notice of her contempt and an opportunity to be heard on the matter and show cause as to the status of the funds," and ordered that she pay the funds to the plaintiffs by 5:00 p.m. on July 1, 2019. On July 5, 2019, Stephens filed a notice of compliance, stating that she had "released" the funds to the plaintiffs. However, the Special Master determined that this statement was false and was intended to lead the court to believe

8

that the funds had been in her trust account all along when, in reality, she had to pay from her own personal funds to cover the judgment. In addition, Stephens never complied with the part of the order that required her to provide an accounting of the funds that were supposed to have been in her trust account since 2015.

Finally, in September 2019, in response to the grievance filed against her, Stephens made additional false and misleading statements, stating:

> Throughout this legal ordeal I have informed my client that if a Motion for Contempt was filed and properly served then the money had to be released as I would not jeopardize my license so that he could attempt to negotiate with the Plaintiff. This put me at odds with my client. Despite the lack of jurisdiction due to the lack of personal service, the Court gave me until July 1, 2019 to release the money. . . . My client instructed me vehemently not to release the money without a valid order from the Court, but since the Court seemed to be ignoring the rules, I was afraid to comply with my client's request in spite of him threatening to report me to the Bar for doing so. The final order which has been provided to you previously, called for me to release the funds and nothing more, nothing less. They were released.

The Special Master concluded that this response was intended to deceive the Bar into believing that Stephens had kept the funds

9

in her account all along.

(b) *Conclusions of Law*

With regard to SDBD No. 7488, the Special Master found that Stephens admitted to violating Rule 1.15 (I) (a) and Rule 1.15 (II) (a), by allowing her trust account to fall below the minimum required balance and causing an overdraft on her trust account.

Next, with regard to SDBD No. 7489, the Special Master determined that Stephens violated Rule 3.3 (a) (1) and Rule 8.4 (a) (4) in the following ways.[5] First, she knowingly made a false statement of material fact to a tribunal in August 2015, when she told the trial court that the $80,000 deposit was in her trust account, even though she knew this statement was false and dishonest. In addition, her failure to correct her false statement to the court at

---

[5] The Special Master noted that the Formal Complaint alleged that Stephens violated Rules 1.15 (I) (a) and 1.15 (II) (a) as well. However, the Special Master concluded that the State Bar had not proven that she violated Rules 1.15 (I) (a) and 1.15 (II) (a) by clear and convincing evidence. As noted in the findings of fact, neither the Asset Purchase Agreement nor the Bill of Sale required that she escrow the "deposit." In addition, Stephens testified that she disbursed the money to her client before there was any dispute about the contract and before there would have been any reason to believe that the disbursement would be improper, and the State Bar offered no evidence to the contrary.

10

any time was the equivalent of an affirmative misrepresentation, see GRPC 3.3, Comment 3 ("There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation."), and her ongoing silence over the course of several years violated both Rules. She also violated Rules 3.3 (a) (1) and 8.4 (a) (4) in July 2016, in her response to the plaintiffs' motion to pay funds into the registry of the court, when she wrote: "There has been no change in the money that is being held in trust." She knew the statement was misleading, and it was intended to deceive the court. Finally, she violated both Rules when she paid the plaintiffs and stated that she had "released" the funds, because she was not holding the money, so it could not be released. By describing her payment this way, she intended to give the court the false impression that she had been holding the money all along.

(c) *The American Bar Association ("ABA") Standards for Imposing Lawyer Sanctions*

The Special Master looked to the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards") to determine the appropriate

11

punishment for Stephens's misconduct, see *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996), and noted that the ABA Standards set forth presumptive sanctions based upon the nature of the duty violated, the attorney's state of mind, and the injury or potential injury caused by the lawyer's misconduct, as well as the existence of aggravating or mitigating factors. See ABA Standard 3.0. The Special Master then concluded that Stephens violated Rules 1.15 (I) (a) and 1.15 (II) (a) in her handling of the trust account in SDBD No. 7488; that she did not cause any actual injury to a client, but she did cause potential injury when she allowed the balance in the trust account to fall below the amount necessary to prevent an overdraft; and that the presumptive sanction for each of these violations is a reprimand. See ABA Standard 4.13 (reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client).

As for her violations of Rule 3.3 (a) (1) in SDBD No. 7489, the Special Master concluded that Stephens made intentionally false statements to the court about the $80,000 for years and improperly

12

withheld material information. These actions caused serious injury to the plaintiffs, who were deprived of $80,000 for over a year, and caused serious adverse effects on the underlying legal proceedings, including leading the court to believe that it was not necessary to order the funds to be paid into the registry of the court. Moreover, her refusal to comply with the trial court's orders multiplied the proceedings. See ABA Standard 6.11 (disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement or improperly withholds material information and causes a serious or potentially significant adverse effect on the legal proceeding).

Finally, with regard to her violations of Rule 8.4 (a) (4) in SDBD No. 7489, the Special Master determined that Stephens knowingly engaged in dishonest and deceitful misrepresentations about the location of the $80,000, and that these actions reflected adversely on her fitness to practice law. See ABA Standard 5.11 (b) (disbarment is generally appropriate when a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or

13

misrepresentation that seriously adversely reflects on the lawyer's fitness to practice law).

The Special Master determined that in aggravation, Stephens had a dishonest and selfish motive, see ABA Standard 9.22 (b); engaged in a pattern of misconduct as she acted deceitfully from 2015 to 2019, see ABA Standard 9.22 (c); committed multiple offenses, see ABA Standard 9.22 (d); engaged in deceptive practices in the disciplinary process (by stating in her response to the grievance that she "released" the funds), see ABA Standard 9.22 (f); and had substantial experience in the practice of law, see ABA Standard 9.22 (i). In mitigation, the Special Master noted the absence of a prior disciplinary record, see ABA Standard 9.32 (a); her good character or reputation, see ABA Standard 9.32 (g), as evidenced by letters she submitted from her peers attesting to this; and that she expressed remorse, see ABA Standard 9.32 (l).

The Special Master then noted that the recommendation of disbarment is in line with the discipline imposed in most similar cases. See *In the Matter of Manning-Wallace*, 291 Ga. 96, 97 (727

14

SE2d 502) (2012) (accepting special master's report and recommendation and disbarring attorney who submitted false evidence to a tribunal, made materially false statements about the evidence to the tribunal, and failed to take any remedial action after making the false statements and submitting the false evidence); see also *In the Matter of Koehler*, 297 Ga. 794 (778 SE2d 218) (2015) (accepting special master's report and recommendation and disbarring attorney based on multiple instances of misconduct, including violations of Rules 3.3 and 8.4 (a) (4) after lawyer made materially deceitful and misleading statements in federal civil action); *In the Matter of Minsk*, 296 Ga. 152 (765 SE2d 361) (2014) (on notice of discipline, disbarring attorney, who was in default, for making knowingly false and misleading statements to his client, to court, and to third parties in connection with bankruptcy case); *In the Matter of Jones-Lewis*, 295 Ga. 861 (764 SE2d 549) (2014) (accepting special master's report and recommendation and disbarring attorney, who was in default, for multiple acts of misconduct including misrepresenting her hours and her fees to a

15

court).

However, the Special Master noted that there were cases that were, to some extent, inconsistent with a recommendation of disbarment for Stephens. See *In the Matter of Branan*, 300 Ga. 779 (798 SE2d 218) (2017) (accepting petition for voluntary discipline and imposing one-month suspension and public reprimand for attorney who violated Rule 3.3 (a) (1) by submitting false statement to court about loan to client); *In the Matter of Wright*, 291 Ga. 841 (732 SE2d 275) (2012) (accepting report and recommendation of the review panel and imposing six-month suspension and public reprimand for attorney who violated Rules 3.3 and 8.4, by making false statements to the Georgia Court of Appeals); *In the Matter of Wilkinson*, 284 Ga. 548 (668 SE2d 707) (2008) (accepting petition for voluntary discipline and imposing one-month suspension and public reprimand for attorney who violated Rule 8.4 (a) (4) by making false statements to trial court and the Georgia Court of Appeals); *In the Matter of Bone*, 283 Ga. 147 (657 SE2d 244) (2008) (accepting petition for voluntary discipline and imposing three-month

suspension for attorney who violated Rule 3.3 (a) (1) when he falsely represented to a court that no recording of a settlement conference had been made); *In the Matter of Johnson*, 281 Ga. 674 (641 SE2d 535) (2007) (accepting petition for voluntary discipline and imposing 30-day suspension and public reprimand for public defender who violated Rule 8.4 (a) (4) by representing clients as private counsel without informing courts).

In conclusion, based upon the foregoing findings of fact and conclusions of law, the presumptive sanctions, the aggravating and mitigating factors, and the weight of authority in similar cases, the Special Master recommended disbarment.

2. *Stephens's Exceptions Before the Review Board and the State Bar's Response*

Stephens filed exceptions to the Special Master's report and sought review by the Review Board pursuant to Bar Rules 4-214, 4-215, and 4-216. While she did not dispute the Special Master's findings of fact or conclusions of law, she did take issue with his weighing of the aggravating and mitigating factors. As for SDBD No.

17

7488, Stephens stated that since there was no actual harm suffered by any client or third party because of the negligent trust account overdraft, an admonition was an appropriate sanction. See ABA Standard 7.4 (providing that admonition is generally appropriate when a lawyer engages in an isolated instance of negligence that is a violation of a duty owed as a professional and causes little or no actual or potential injury to a client, the public, or the legal system). In addition, she contended that this case is distinguishable from other trust account cases where more severe sanctions were imposed. See, e.g., *In the Matter of Storrs*, 300 Ga. 68 (792 SE2d 664) (2016) (accepting petition for voluntary discipline and imposing three-month suspension for lawyer who withdrew $11,150 in client funds for his personal use).

As for SDBD No. 7489, Stephens asserted that she made her misrepresentation to the court based on her belief that the $80,000 was still in her client's safe and available, and that she could redeposit it to her trust account at any time based on assurances she received from her client. In terms of the aggravating factors found

by the Special Master, she claimed that she did not have a dishonest or selfish motive, but instead that her motive was solely to protect her client; that while it was true that she engaged in a "years-long" deceit of the trial court, this did not constitute a pattern of misconduct, because it was simply a "continuation of one misconduct"; that while she violated multiple rules, there were actually only two disciplinary matters charging rule violations; and that while it was true that she had substantial experience in the practice of law, she only had three years of practice in the area of law in question. As for matters in mitigation, in addition to the absence of a prior disciplinary record, good character or reputation, and remorse, Stephens offered the following mitigating factors: (1) the absence of a dishonest or selfish motive (as she did not profit or gain from her actions in either matter), see ABA Standard 9.32 (b); (2) her timely good faith effort to make restitution or rectify consequences of misconduct by making the plaintiffs whole, see ABA Standard 9.32 (d); and (3) the imposition of other penalties or sanctions, based on the fact that she ended up personally paying the

$80,000 owed by her client, see ABA Standard 9.32 (k). Moreover, Stephens stated, as to her mental state, that during the relevant period, she had been dealing with her ailing mother, which required her to travel out of state regularly and which caused her considerable mental anguish, and that the disciplinary authorities should take into consideration her personal or emotional problems in dealing with her elderly mother at the time. See ABA Standard 9.32 (c).

Finally, regarding the level of discipline, Stephens reiterated that as to SDBD No. 7488, a letter of admonition is the appropriate level of discipline, and that in SDBD No. 7489, she should only receive a six-month suspension. Stephens noted that she paid the $80,000, albeit late; that there was little or no serious or potentially serious injury to a client, the public, or the legal system due to her misrepresentations to the court and the State Bar; and that ABA Standard 7.2 provides that suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to

a client, the public, or the legal system. Stephens contended that this case is essentially about her failure to inform the court that she had previously complied with the client's demand that she release the funds; that this is the type of misconduct contemplated by ABA Standard 7.2; and that the appropriate discipline to be imposed is a one-month to six-month suspension. Stephens then "concur[red] with the Special Master's reference to cases that are inconsistent with disbarment" and asserted that those cases were more appropriate based on the facts of this case.

The State Bar filed a response to her exceptions, generally contending that the Special Master's application of the ABA Standards including the balancing of mitigating and aggravating factors was correct, and that the Special Master's recommendation of disbarment was supported by case law.

3. *Review Board's Report and Recommendation*

The Review Board issued its report and recommendation of a six-month suspension and public reprimand. The Review Board adopted the findings of fact and conclusions of law made by the

Special Master, noting that Stephens had not shown, or attempted to show, that the findings of the Special Master were clearly erroneous or manifestly in error. The Review Board also agreed with the Special Master and adopted his findings regarding the duties violated, the analysis of Stephens's mental state, and the injury or potential injury caused by her misconduct.

However, the Review Board disagreed to a certain extent with the Special Master's consideration of the aggravating and mitigating factors, the analysis of which it noted centered on the violations that occurred regarding SDBD No. 7489. The Review Board agreed that ABA Standard 9.22 (b) applied because Stephens acted dishonestly, but it did not believe that her conduct was also for a selfish motive. It also agreed that Stephens committed multiple offenses, see ABA Standard 9.22 (d), but disagreed with the Special Master's statement that Stephens violated "each rule multiple times," as it believed this was not supported by the findings of fact. Next, it agreed with the Special Master that Stephens engaged in deceptive practices in the disciplinary process (although it noted that

Stephens did take responsibility for this deception) and agreed that she had substantial experience in the practice of law. See ABA Standards 9.22 (f) and (i). However, the Review Board disagreed with the Special Master that Stephens engaged in a pattern of misconduct and found that this was not an aggravating factor because the misconduct arose from a continuation of the initial misconduct and "not a pattern of misconduct involving different behaviors." In addition, the Review Board found that the Special Master did not give enough weight to the factors in mitigation, including the "significant" evidence Stephens had shown of her good reputation and character and the lack of a prior disciplinary record. Moreover, it found that Stephens did not profit or gain from her violations; on the contrary, she deposited $80,000 of her personal funds to make the injured plaintiffs whole; and while forced or compelled restitution is neither an aggravating nor mitigating factor, see ABA Standard 9.4 (a), the Review Board asserted that it should be seen as mitigating here pursuant to ABA Standard 9.32 (d), as she did rectify the consequences of her misconduct. Finally,

while the Special Master found remorse as a mitigating factor, the Review Board determined that the level of remorse on behalf of Stephens went underappreciated by the Special Master; and that during oral argument, it was apparent to the Review Board that Stephens's remorse was genuine.

Accordingly, the Review Board recommended a six-month suspension from the practice of law, a public reprimand, and a condition that within one year of reinstatement Stephens utilize the Law Practice Management program of the State Bar and complete a CLE course aimed at trust account management or financial account management in general. The Review Board stated, without providing citations, that the cases of punishment less than disbarment cited by the Special Master were more appropriate in analyzing the facts of this case.

4. *The State Bar's Exceptions to the Review Board's Report*

The State Bar asks this Court to enter a final judgment disbarring Stephens. The State Bar asserts that the Review Board was wrong in finding that ABA Standard 9.22 (c) (pattern of

misconduct) did not apply because the Review Board's requirement that the conduct involve "different behaviors" is contradicted by the ABA comments, which explain that ABA Standard 9.22 (c) applies to repeated instances of similar conduct. Second, the Bar contends that the Review Board erred when it concluded that Stephens's ultimate compliance with multiple court orders should be considered mitigating because she only paid the money back under the threat of contempt of court. See ABA Standard 9.4 (a) (forced or compelled restitution should not be considered mitigating). Finally, it asserts that the Review Board erred when it stated that the level of remorse of Stephens went unappreciated by the Special Master; the Special Master concluded that the remorse factor applied; it was the Special Master, not the Review Board, that heard Stephens testify about her remorse under oath; and the Special Master, therefore, was in the best position to evaluate this factor, as it was based upon an in-person assessment of her credibility and honesty.

The State Bar asserts that the Special Master's recommendation of disbarment is supported by case law from this

Court in cases involving a lawyer's deliberate and knowing misrepresentations to a court, and that no case law justified a lesser penalty. See *In the Matter of Shehane*, 276 Ga. 168, 170 (575 SE2d 503) (2003) (disbarring attorney for his "deliberate, deceitful acts to obfuscate the truth"); *Koehler*, 297 Ga. at 796 (disbarment appropriate sanction where lawyer made materially deceitful and misleading statements in court filings); *Minsk*, 296 Ga. at 153 (disbarment was appropriate where attorney had pattern of making knowingly false statements); *Jones-Lewis*, 295 Ga. at 862 (disbarment appropriate sanction where lawyer, who was in default, made false statements to court).

5. *Stephens's Response*

Stephens states that to the extent that the Special Master and the Review Board have different views of the application of ABA Standard 9.22 (c), she should get the benefit of the Review Board's application. She also agrees with the Review Board's recommendation of discipline, including the conditions imposed, and states that the cases cited by the Review Board, along with other

cases, support such a recommendation. See *In the Matter of Adams*, 291 Ga. 768 (732 SE2d 446) (2012) (accepting petition for voluntary discipline and imposing 18-month suspension where attorney admitted that he was indicted on 17 counts of false statements based on his conduct in submitting sworn statements containing misrepresentations of the number of hours that he worked representing indigent clients and billed to Gwinnett Judicial Circuit Indigent Defense Program; charges were nolle prossed after he agreed to reimbursement, to a lifetime ban on representing any indigent defendant whose representation was paid through public funds, and to file petition for voluntary discipline with the State Bar); *In the Matter of Hardwick*, 288 Ga. 60, 60-61 (701 SE2d 163) (2010) (accepting petition for voluntary discipline and imposing six-month suspension for attorney's acts of abandoning client to client's detriment and submitting false statement in disciplinary process).

6. *Analysis and Conclusion*

The parties do not dispute the Special Master's findings of fact regarding the rule violations, and we agree that the evidence

27

supports the Special Master's determinations that Stephens violated Rules 1.15 (I) (a) and 1.15 (II) (a) in SDBD No. 7488, and Rules 3.3 (a) (1) and 8.4 (a) (4) in SDBD No. 7489. In addition, the Special Master and the Review Board agree on Stephens's mental state at the time that she committed these offenses; that she acted negligently in regard to the trust account violations and intentionally in regard to the lawsuit against the client; and we likewise agree that the record supports such determinations. And while Stephens asked the Review Board to take into consideration her mental anguish at the time the conduct arose based on her need to take care of her ailing mother, there is no clear error in its failure to do so, as Stephens offered no evidence to support her claim.

Thus, the only issues before the Court that are in dispute are the (1) relevant aggravating and mitigating factors, and (2) appropriate level of discipline to impose. As to the first issue, the Review Board appears to have agreed with Stephens that ABA Standard 9.22 (c) (pattern of misconduct) did not apply, because the misconduct arose from a continuation of the initial misconduct, not

28

"different behaviors." However, we do not agree with the Review Board's conclusion, because this is not a limitation we have previously recognized and we see no reason to do so here given the multiple misstatements that Stephens made to the trial court over a four-year period. See, e.g., *In the Matter of Coulter*, 304 Ga. 81, 85 (816 SE2d 1) (2018) (special master determined that facts demonstrated a pattern of misconduct under ABA Standard 9.22 (c), where attorney committed multiple violations of trust account rules in relation to a single client); *In the Matter of Hunt*, 304 Ga. 635, 642 (820 SE2d 716) (2018) (special master determined that attorney engaged in pattern of misconduct, see ABA Standard 9.22 (c), pointing to his admission of multiple withdrawals of children's money from trust account for improper purposes).

In addition, the Review Board appears to have agreed with Stephens that ABA Standard 9.32 (d) (rectifying the consequences of misconduct) should apply. However, while it is true that Stephens eventually paid the $80,000 owed to the plaintiffs out of her own funds, she only did so after receiving multiple court orders

demanding that she do so and threatening her with contempt for failure to comply with the court's order. Thus, we likewise do not agree with the Review Board's determination that her conduct in this regard can be considered a mitigating factor. See ABA Standard 9.4 (a) (providing that forced or compelled restitution is not mitigating). See also *In the Matter of Thomson*, 266 Ga. 157, 158 n. 1 (464 SE2d 818) (1996) (restitution in response to court order was not mitigating).

Finally, the Review Board appears to have agreed with Stephens that she did not act with a selfish motive and that her level of remorse was underappreciated. But, as the State Bar points out in its exceptions to this Court, it was the Special Master and not the Review Board who heard Stephens testify about her remorse and it is the Special Master who is in the best position to judge the credibility of a witness. See *In the Matter of Eddings*, 314 Ga. 409, 416 (877 SE2d 248) (2022). To the extent that the Review Board discredited the Special Master's findings in this regard, we caution the Review Board that these are the sort of "findings that generally

should be left to the Special Master in the first instance." *In the Matter of Crowther*, 318 Ga. 277, 296-297 n. 12 (897 SE2d 448) (2024); see Bar Rule 4-216 (a) ("The findings of fact made by a Special Master may be reversed if the State Disciplinary Review Board finds them to be clearly erroneous or manifestly in error. Conclusions of law and determinations of appropriate sanctions shall be reviewed de novo."). See generally *In the Matter of Paine*, 316 Ga. 157, 165 (886 SE2d 824) (2023) (holding that the Review Board cannot "ignor[e] findings from the Special Master and [make] its own findings inconsistent with the Special Master's findings, without explaining *why* the Special Master's findings were clearly erroneous") (emphasis in original). Here, while Stephens claimed that her motive was solely to protect her client, the Special Master found that her conduct was, at least in part, motivated by a selfish concern to conceal her mishandling of the funds and her initial false statements to the court.

As to the level of discipline, the fact that Stephens repeatedly lied to the trial court over the course of four years, initially made

31

misrepresentations to the State Bar when it began investigating this matter, and only paid restitution *after* the threat of contempt makes this matter significantly more egregious than the cases the Review Board relied on to recommend a lesser sanction than disbarment. See *Branan*, 300 Ga. at 779 (imposing one-month suspension and review panel reprimand where attorney submitted a single false statement to a court about a loan to a client); *Wright*, 291 Ga. at 841 (imposing six-month suspension and public reprimand where attorney made a single false statement in appellate brief before the Georgia Court of Appeals); *Wilkinson*, 284 Ga. at 548-549 (imposing one-month suspension and public reprimand for negligent misrepresentations to the trial court and the Georgia Court of Appeals); *Bone*, 283 Ga. at 147-148 (imposing three-month suspension where attorney corrected his misrepresentation to the court that no recording of a settlement conference had been made). And *Adams* and *Hardwick*, both cited by Stephens, are distinguishable, in that the attorney in *Adams* admitted to violating only Rule 8.4 (a) (4) and had filed a petition for voluntary discipline

as part of the resolution of a criminal matter involving his misconduct, see 291 Ga. at 768, and *Hardwick* involved only one instance of the attorney making a false statement in the disciplinary process. See 288 Ga. at 60-61. Therefore, in light of the severity of her actions, which included lying to the court over the course of several years, and our precedent involving attorneys who made multiple, intentional false or misleading statements to a court, we agree with the Special Master that disbarment is the only appropriate sanction for Stephens's violations of the Rules. See *Eddings*, 314 Ga. at 409-410 (disbarment was warranted where attorney made multiple false statements in connection with representation of a client and in disciplinary proceedings); *Koehler*, 297 Ga. at 796 (disbarment was appropriate sanction where lawyer repeatedly asserted frivolous claims in multiple tribunals and made materially deceitful and misleading statements in court filings); *Minsk*, 296 Ga. at 153 (disbarment was appropriate sanction where lawyer had pattern of making knowingly false statements to his client, the court, and third parties). Accordingly, it is hereby ordered

33

that the name Deirdre Maria Stephens be removed from the rolls of persons authorized to practice law in the State of Georgia. Stephens is reminded of her duties under Bar Rule 4-219 (b).

*Disbarred. All the Justices concur.*

Decided February 20, 2024.

Disbarment.

*Paula J. Frederick, General Counsel State Bar, William D. NeSmith III, Deputy General Counsel State Bar, Jenny K. Mittelman, William V. Hearnburg, Jr., Assistant General Counsel State Bar*, for State Bar of Georgia.

*David S. Lipscomb*, for Stephens.